DECISION
This matter is before the Court pursuant to the application of Frederick DeWitt (petitioner) for post-conviction relief pursuant to G.L. 1956 § 10-9.1-1.
 TRAVEL
According to petitioner's oral argument at the conclusion of the evidentiary hearing conducted in this matter, petitioner was arrested on March 31, 1995 on charges that later ripened into an indictment P1/95-2962 ("indictment"). The indictment charged petitioner with three crimes: Count 1 ". . . sexual penetration to wit fellatio . . . by force or coercion in violation of section 11-37-2 and section 11-37-3 of the General Laws of the State of Rhode Island, 1956, as amended (Reenactment of 1994)." Count 2 "sexual penetration, to wit, vaginal intercourse . . ., in violation of section 11-37-2 and section 11-37-3 of the General Laws of the State of Rhode Island, 1956, as amended (Reenactment of 1994)." Count 3, "did assault . . . with intent to commit 1st Degree Sexual Assault, in violation of § 11-5-1 of the General Laws of the State of Rhode Island, 1956, as amended (Reenactment of 1981)." (Resp.A, full).
On May 15, 1998, petitioner while being represented by appointed counsel, entered a plea of nolo contrendre before the court to an amended charge in Count 1 of the indictment ". . . a violation of the crime against nature, 11-10-1 of the Rhode Island General Laws."[1] In exchange for petitioner's plea of nolo contrendre, the State of Rhode Island dismissed Counts 2 and 3 of the indictment; and in addition, the State of Rhode Island dismissed all charges in a separate Criminal Information, P2/97-3072A. Petitioner was sentenced on the amended charge in Count 1 *Page 2 
of the indictment to a negotiated disposition of 14 years at the Adult Correctional Institution, with 4 years to serve retroactive to April 1, 1995, 10 years suspended, 10 years unsupervised probation. (Pet. 2, Full).
On May 10, 2000, petitioner was arrested and afterward charged with kidnapping, P2/2000-3960A, second degree robbery, P2/2000-3948A, and simple assault/battery, P3/2000-1865A. Based upon the charges filed against petitioner in May 2000, the State of Rhode Island alleged that petitioner was a violator of the 10 years suspended, 10 years probation previously imposed in P1/95-2962. Petitioner was presented as a violator on May 16, 2000. On May 16, 2000, petitioner admitted he was a violator; and was later sentenced to 40 months to serve, of the 10 years previously suspended.
On September 30, 2005, petitioner filed pro se his petition for post conviction relief pursuant to § 10-9.1-1. In his petition, petitioner provided the "background" leading up to his plea to the indictment. Initially, petitioner was represented by a different court appointed counsel than the one who represented him at his plea. Petitioner, in the "background" wrote "(T)hat attorney wanted DeWitt to plea to a reduced charge of second degree sexual assault, and to accept five (5) years to serve. However, DeWitt insisted on a trial."
Additionally, in the "background" section, petitioner wrote that after his initial appointed attorney's request to be released as petitioner's attorney was denied, another attorney entered his appearance on petitioner's behalf. According to petitioner, because of an unfulfilled promise by the next attorney to obtain a trial within six months of his agreeing to represent petitioner, the second attorney was dismissed by petitioner. Thereafter, Ms. Marie Roebuck, Esq. was appointed to represent petitioner.
Petitioner further wrote, "(P)rior to Roebuck's appointment the State Attorney General was engaged in a battle preserving charges against Edward McGovern (hereinafter referred to as McGovern) and Phillip O'Donnell, (W1-97-0053, filed 4/27/98) regarding statute 11-10-1, crime against nature." There, the State failed to prevail after the defendants asserted their equal protection rights were violated when charged with § 11-10-1; in that, the statute unlawfully discriminated between married and unmarried heterosexual partners. After an eloquent analysis, *Page 3 
the court ruled for the defendants.[2] Soon thereafter, § 11-10-1 was repealed. Also, no timely appeal was taken by the State having knowledge that legislators would imminently repeal § 11-10-1.
Petitioner continued, "(I)n the case at bar, on May 13, 1998, Roebuck advised DeWitt, to plea nolo to an amended charge of 11-10-1, crime against nature. After three years of trying to obtain a trial, DeWitt took Roebuck's advice and consequently received, 14 years, with 4 to serve, 10 suspended. . . ." On June 6, 2000, DeWitt was sentenced to 40 months of that ten year suspended sentence for violations, and another 15 years for an unrelated robbery charge. DeWitt now looks to have that 40 months served for violation credited to the current 15 years now being served due to unreasonable advice and ineffective assistance of counsel in case P1/95-2962A.
The gist of petitioner's ineffective assistance of counsel argument is summarized in his petition where he wrote, "(T)his is clearly a case of incompetent lawyering governed under Strickland-v-Washington . . . and it's progeny. The facts will show, that (counsel), simply failed to prepare, investigate, or research the law after and consistent to the McGovern ruling, and make a reasonable effort to apply the ruling to DeWitt's defense." (Emphasis in the original)
On February 25, 2008, this Court conducted an evidentiary hearing on the petition. At that hearing, only one witness testified, Marie Roebuck, Esq. who was presented by petitioner. Ms. Roebuck readily admitted she represented petitioner in the indictment for less than a year before the plea was accepted. Ms. Roebuck testified she was not aware of any prior plea offers before she entered her appearance. Ms. Roebuck could not recall the prosecutor who was originally assigned to prosecute the indictment, but did recall that John McMahon, Esq. was the prosecutor who was later assigned when the plea was accepted.
Ms. Roebuck testified that after she took possession of petitioner's file from predecessor counsel, she reviewed the bail hearing tapes and transcripts, grand jury proceedings, researched the law including the elements of all the offenses, including the crime against nature statute as it then existed, reviewed hospital records for the complainant named in the indictment, and hired an expert who would have offered testimony at trial favorable to petitioner. Ms. Roebuck also testified she advised petitioner of the results of her research and investigation. Ms. Roebuck *Page 4 
testified that if the matter had proceeded to trial, in her judgment, the issue would come down to the issue of credibility of the State's complaining witness.
Ms. Roebuck testified, on examination by petitioner, that she is familiar with the State v. McGovern matter; however, she could not recall when she became aware of the decision. Ms. Roebuck further testified that at the time of the plea she was aware of the status of § 11-10-1; and that following the plea, she became aware that § 11-10-1
was repealed.[3]
Ms. Roebuck testified that after conferring with petitioner as she was negotiating with the State to resolve the charge(s) against petitioner, she was attempting to obtain the best outcome for her client. In doing so, she testified, on examination by the State, that she communicated to the prosecution petitioners demand that he would not plea to a (1) charge of first degree sexual assault because her client insisted on the voluntary nature of any sexual conduct; (2) a charge of a "violent felony" under Rhode Island law; and (3) a charge that would require petitioner to register under the "sexual predator statute."
Ms. Roebuck recalled that an offer was made to resolve the indictment. She testified the offer to plea did not require petitioner to plea to a second degree sexual assault an offense classified as a crime of violence under Rhode Island law. Ms. Roebuck testified she communicated that offer to petitioner. Ms. Roebuck further testified that petitioner accepted the offer. Ms. Roebuck testified that, in her mind, when he entered his plea he did so voluntarily.
 ANALYSIS
Before addressing the post-conviction claim, this Court will address the State's argument that the petition, although styled as a post-conviction, is in reality a Super. R. Crim. P. 35 Motion to Reduce Sentence not cognizable under § 10-9.1-1.
The State's argument has some merit as DeWitt wrote in his petition, ". . . DeWitt now looks to have that 40 months served for violation credited to the current 15 years now being served. . . ." That statement, at first blush, appears to ask this Court to reduce the balance of the sentence imposed in a separate matter based upon the sentence imposed in P1/95-2962A because petitioner was a violator. However, petitioner continued to suggest the requested relief is *Page 5 
warranted ". . . due to unreasonable advice and ineffective assistanceof counsel in P1/95-2962A". (emphasis added).
Petitioner in this matter is acting pro se. As a general rule, courts should not apply the same rigorous standards to pleadings filed by pro se litigants as to pleadings filed by attorneys. This Court will not agree to the State's argument that the petition is truly a Super R. Crim. P. Rule 35 Motion to Reduce Sentence dressed up in § 10-9.1-1
clothing. This Court will address the merits of the post-conviction petition.
As petitioner acknowledges, his ineffective of assistance claim is governed by the standard set forth in Strickland v. Washington,466 U.S. 668, 687 (1984). The Strickland standards were adopted by the Rhode Island Supreme Court in Barboza v. State, 484 A.2d 881 (R.I. 1984);Brown v. Moran, 534 A. 2d 180, 182 (R.I. 1987); Kholi v. Wall,911 A.2d 262, 264 (R.I. 2006); Chalk v. State, 949 A.2d 395, 398 (R.I. 2008).Strickland lays out two components for post-conviction relief due to ineffective assistance of counsel:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id. at 687.
The petitioner must prove both components of the Strickland standard or relief will be denied. Strickland, Id. at 697. Additionally,Strickland holds that a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" putting a heavy burden on the defendant to prove otherwise. Id. at 690. In determining whether the acts of counsel were "outside the wide range of professionally competent assistance" the Court must "strongly presume" that counsel offered adequate assistance as part of one of many potential trial strategies. Id. Petitioner bears the burden of providing, by a preponderance of the evidence, that he is entitled to post-conviction relief. Burke v. State, 925 A.2d 890, 892 (R.I. 2007) (quoting Ferrell v. Wall, 889 A.2d 177, 183-84 (R.I. 2005). *Page 6 
The petitioner focused on the following issues presented before the Court, both in his written petition, and at the post-conviction relief hearing. The petitioner alleges failure by counsel "to prepare, investigate, or research the law after and consistent to the McGovern ruling, and make a reasonable effort to apply the ruling to DeWitt's defense was incompetent lawyering."
In his written petition, as well as his argument to this Court, petitioner relies upon the timing of the written decision inMcGovern. Petitioner argues that under the doctrine of staredecisis, the written decision filed April 24, 1998 and the specific ruling that § 11-10-1 was unconstitutional as it applied to consenting unmarried adults in McGovern, was binding in future cases before the same court or other courts owing obedience to the decision. (emphasis added). See Gately v. Commonwealth of Massachusetts, 2 F.3d 1221
(1st Cir. 1993). Therefore, according to petitioner, the decision in McGovern ruling that § 11-10-1 was unconstitutional as it applied to unmarried adults, was binding as a matter of law upon the court in his case disposed of on May 15, 1998; and counsel was ineffective in not knowing of the existence of the McGovern decision, and attempting to apply it in his case.
Petitioner is accurate in his oral argument that although he was neither a party to McGovern or in privity with a party inMcGovern, assuming the court in petitioner's matter was under a legal duty to apply the rule of law expressed in McGovern, that under the doctrine of stare decisis McGovern must control. This is so as, unlike the doctrines of res judicata and collateral estoppel which is confined to parties and those in privity with parties because of the underlying policy to protect final judgments, the doctrine of stare decisis is not narrowly confined. "Rather, when its [doctrine of stare decisis] application is deemed appropriate, the doctrine is broad in impact, reaching strangers to the earlier litigation." EEOC v. Trabucco,791 F.2d 1, 2 (1st Cir. 1986).
As the First Circuit Court of Appeals went on to explain:
 The essential principles of stare decisis may be described as follows:
 (1) an issue of law must have been heard and decided;
 (2) if "an issue is not argued, or though argued is ignored by the court, or is reserved, the decision does not constitute a precedent to be followed";
 (3) "a decision is . . . stare decisis despite the contention that the court was *Page 7 
not properly instructed by counsel on the legislative history, or that the argument was otherwise insufficient";
 (4) a decision may properly be overruled if "seriously out of keeping with contemporary views" . . . [or] passed by in the development of the law . . . or . . . proved to be unworkable"; and
 (5) there is "a heavy presumption that settled issues of law will not be reexamined." Trabucco II, 791 F.2d at 4. (citations omitted).
However, petitioner is not correct in his argument that the trial court in his matter was bound to accept, as a rule of law, the decision in McGovern. The Rhode Island Supreme Court before McGovern was decided addressed the issue of opposing decisions made by trial courts, inForte Brothers, Inc. v. State of Rhode Island, Department ofTransportation. J.L. Marshall Sons, Inc. v. State of Rhode Island,Department of Transportation, 541 A.2d 1194 (R.I. 1988).
In Forte Bros. Inc., the court was faced with one judge deciding a statute application was prospective and not retroactive; and a later judge of the same court holding the same statute was retroactive and not prospective.
The Court wrote:
 . . . we take this opportunity to dispel any notion that Superior Court justices are bound by prior decisions made by their colleagues. It is true that we have adopted a general rule of convenience that in a particular case a decision made by one judge of coordinate jurisdiction should not in the absence of special circumstances be set aside by another justice passing upon the identical question in the same case. Goodman v. Turner, 512 A.2d 861, 864 (R.I. 1986) (other citations omitted). However, we shall not extend the doctrine of law of the case to provide a rule of stare decisis regarding decisions of trial courts as having binding effects upon other members of the same or coordinate trial courts. Obviously, a well-reasoned decision of a trial justice of coordinate jurisdiction may have a persuasive effect upon another justice of a trial court. However, only the decisions of this court are of binding effect upon all justices of trial courts of this state. Forte Bros., Inc. at 1196. *Page 8 
Even if Ms. Roebuck knew of the McGovern decision at the time petitioner's case was disposed of, McGovern was at best persuasive; but not binding upon the trial court in petitioner's matter. Petitioner has not shown how, if at all, he was prejudiced by counsel's failure to argue McGovern in his matter.
Although not well developed, petitioner appears to argue whether or not McGovern was binding or simply persuasive is not the critical issue. The issue is that his counsel was ineffective in failing to inform him of any changes in the law or the status of the law petitioner faced. For this proposition, petitioner cites Scarpa v. Dubois, 38 F.3d 1
(1st Cir. 1994) and Baker v. Barbo, 177 F.3d 149
(3rd Cir. 1999) both federal habeas corpus proceedings.
In Scarpa, petitioner was convicted after trial. In his habeas action, he submitted an affidavit of his trial counsel wherein trial counsel professed his ineffectiveness. His trial counsel's performance according to a finding by the United States District Court ". . . not only fell below an objectively reasonable standard of proficiency but also caused a breakdown in the adversarial system." Scarpa, 38 F. 3d, at 5. The United States District Court found that conduct by defense counsel was a"per se presumption of prejudice" and did not need to inquire into the existence of actual prejudice.
On appeal, the First Circuit Court of Appeals upheld the finding that defense counsel was an objectively unreasonable holding "(A)t the least, defense counsel should understand the elements of the offenses with which his client is charged and should display some appreciation of the recognized defenses thereto." Scarpa, 38 F. 3d, at 10. Despite these finding of substandard performance, the First Circuit Court of Appeals reversed the District Court as there was no "case-specific inquiry into prejudice" rejecting the finding of per se presumption of prejudice.Scarp a, Id. at 11.
In Barbo, the petitioner, who acting upon his attorney's advice, rejected what turned out to be a lower maximum sentence[4] received by his co-defendant, went to trial, was later convicted; and claimed his attorney was ineffective in not knowing a new law was in effect which required a lengthier mandatory minimum sentence. The United States District Court for the District of New Jersey denied his petition finding that under these facts his attorney's ignorance of the sentencing law did not amount to ineffective assistance of counsel. On appeal, *Page 9 
the Third Circuit affirmed the denial of the habeas corpus petition confining its review to the significance of the attorney's ignorance of the sentencing law. Barbo, at 153.
The Court in Barbo applied the two-prong test fromStrickland to the underlying facts. While the Court in Barbo agreed that counsel's ignorance of the sentencing law satisfied the first prong ofStrickland, the Court held that he did not meet the second prong showing that there is "a `reasonable probability that, but for' the error there might have been a different result." Barbo, at 154.
Even if this Court were to find, based upon the evidence, that petitioner has shown that counsel's performance was deficient or committed errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment, that is only part of petitioner's obligation. Petitioner must show, by a preponderance of the evidence, that the deficient performance prejudiced him. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.Strickland, 466 U.S. at 687.
At the hearing on this petition, petitioner did not offer an affidavit, petitioner did not take the witness stand to testify; and more importantly, as the State accurately argued, petitioner did not put forth any evidence as to what decision petitioner would have made had the information been provided to him[5]. What petitioner in his written petition asks is for this Court to speculate on what petitioner would have done. Under Strickland, petitioner has the obligation to present evidence that had Ms. Roebuck advised him of McGovern, he would have perhaps (1) resisted the State's plea offer, or (2) gone to trial. Further, petitioner is required to show that had the advice been given that, the "reasonable probable" outcome given his exercise of either of those options, would have been different. Hughes v. State, 609 A.2d 943,944 (R.I. 1992).
Additionally, in his petition, petitioner focuses upon the timing of the written decision in State v. McGovern, supra, as it relates to the timing of his plea and the later act of the legislature in repealing the former § 11-10-1. Indeed, petitioner wrote that following the written decision in McGovern being filed, "no timely appeal was taken by the State, having knowledge that legislators would imminently repeal11-10-1". Petitioner, without any evidence to support his claim, implies that the State acted in bad-faith in accepting his plea to an amended charge of *Page 10 
abominable and detestable crime, on May 15, 1998, when the State knew they would not appeal the McGovern decision; and further, that the State knew the legislators would repeal § 11-10-1.
At petitioner's post-conviction hearing, absolutely no evidence was offered to support the claim of the State's knowledge of the future intention of the legislators. The only witness who did testify was Ms. Roebuck. Even if this Court were to infer the reason the State did not take a timely appeal from McGovern was its knowledge that the legislators would imminently repeal § 11-10-1, that inference would require this Court to make an additional inference that the knowledge by the State as to the legislators intent was something Ms. Roebuck knew or should have known before the plea in May 1998. This Court cannot do so.
 CONCLUSION
Petitioner has failed to meet the heavy burden of proving ineffective assistance of counsel as he has alleged.
The petition for Post-Conviction Relief is therefore denied. Counsel for the Respondent shall submit an Order consistent with this decision.
[1] At the time of the plea R.I.G.L § 11-10-1 provided: Abominable and detestable crime against nature. — Every person who shall be convicted of the abominable and detestable crime against nature, either with mankind or with any beast, shall be imprisoned not exceeding twenty (20) years nor less than seven (7) years.
[2] On April 24, 1998, the Rhode Island Superior Court filed a bench decision in State of Rhode Island v. Edward F. McGovern, W1/97-0053B andState of Rhode Island v. Phillip D. O'Donnell, W1/97-0053C granting defendant McGovern's motion to dismiss Count 7, abominable and detestable crime against nature. 1998 WL 252236 (R.I.).
[3] On June 5, 1998, the General Assembly amended § 11-10-1, deleting the reference to "mankind".
[4] According to the written decision, not only was the defense attorney unaware of the change in the law, but the prosecutor and the trial court were all unaware of the change in the law. Baker v.Barbo, 177 F.3rd 149, 152 (3rd Cir. 1999)
[5] Petitioner's decision not to testify may have resulted from his concern of being cross-examined about a part of his written petition where he wrote: "In the case at bar, after the McGovern ruling and prior to the State offering to amend the initial charges, DeWitt did inform Attorney Roebuck of the McGovern case."